UNITED STATES of America,
Plaintiff-Appellee,

v.

Eddie Lee ANDERSON,
Defendant-Appellant.

No. 74–1461.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1975.

Decided March 31, 1975.

Daniel L. Freeland, Hammond, Ind., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and SPRECHER, Circuit Judges.

585

SWYGERT, Circuit Judge.

Defendant-appellant Eddie Lee Anderson is appealing his conviction and ten year sentence for violation of 18 U.S.C. § 2113(d) on the basis of alleged double jeopardy and due process violations.

On March 13, 1972 Anderson participated in an armed robbery of the Lake Federal Savings and Loan Association in Hammond, Indiana. During that robbery weapons were pointed at a teller and at a woman at the front desk. Due to some confusion only thirty-five dollars in dimes was actually taken by the robbers.

On March 17, 1972 an information was filed against Anderson under cause number 72 H CR 44 charging him with a violation of 18 U.S.C. § 2113(d).[1] Pursuant to a plea agreement, a new information, cause number 72 H CR 59, was filed on April 21, 1972 charging Anderson with a violation of 18 U.S.C. § 2113(b),[2] for taking "with intent to steal and purloin . . . certain money aggregating $35.00 . . . ." Anderson pled guilty to this new information and on May 5, 1972 was sentenced to a prison term of ten years. Information number 72 H CR 44 charging the violation of section 2113(d) was then dismissed on the motion of the Government.

On November 30, 1972 Anderson filed a section 2255 petition seeking to have his guilty plea vacated on the basis of alleged noncompliance with Fed.R.Crim.P. 11. This motion was denied by the district court on March 16, 1973 and appealed to this court. During consideration of that appeal we discovered that although Anderson had been given a ten

year sentence the information charged him with a theft of $35.00 and the maximum penalty under section 2113(b) for thefts of under $100 is one year. On October 4, 1973, sua sponte, we ordered the Government to file a memorandum addressing this point. The Government's memorandum indicated that at the time of the guilty plea everyone involved, including the defendant, mistakenly believed that Anderson was subject to a possible ten-year sentence. The Government suggested that since Anderson did not correctly understand the maximum penalty which he could possibly receive, his guilty plea was not voluntarily entered and thus the section 2255 petition should be granted and his guilty plea vacated. In accordance with the Government's confession of error, on November 7, 1973, in an unpublished order, this court reversed the decision of the district court on the section 2255 petition and remanded with directions "to vacate the illegal ten-year sentence imposed upon Anderson under information No. 72 H Cr 59, to allow Anderson to withdraw his guilty plea, and to conduct new arraignment proceedings at which Anderson can plead anew to charges brought against him."

Subsequent to our order, a new indictment, No. 73 H CR 157, was obtained charging Anderson with violating 18 U.S.C. § 2113(d), the more serious assault with a dangerous weapon statute which provides for a twenty-five-year maximum sentence regardless of the amount of money stolen. Although Anderson's appointed counsel who later withdrew did file a motion seeking an extension of time in which to file motions raising a double jeopardy issue, no formal double

1. 18 U.S.C. § 2113(d) provides:

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

2. 18 U.S.C. § 2113(b) provides:

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding

$100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

jeopardy claim was ever presented before trial. Anderson was tried and convicted by a jury and sentenced to ten years imprisonment.

## I

A preliminary issue we must consider is whether Anderson is foreclosed from raising the double jeopardy question on appeal since he failed to raise it in a formal manner in the district court. Indeed, his first appointed counsel withdrew because Anderson refused to provide certain papers and documents concerning his previous conviction which the attorney thought might be relevant to a double jeopardy defense.

■■ A finding of waiver requires "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). We should particularly scrutinize a claim of waiver when it relates to a right as fundamental as that embodied in the constitutional protection against double jeopardy. See Kepner v. United States, 195 U.S. 100, 135, 24 S.Ct. 797, 49 L.Ed. 114 (1904) (dissenting opinion of Mr. Justice Holmes).

In this case we do not find an "intentional relinquishment" of a "known right." A double jeopardy defense is normally not the type of claim that would be foregone for some strategic purpose. Indeed, the question of a possible double jeopardy problem was at least mentioned before the district court. Moreover, it is clear from the transcript that Anderson refused to give his attorney the requested documents because he did not think that anything concerning the prior charges could be relevant to the new charge brought against him. This demonstrates a failure to fully comprehend the right to be free from being placed in jeopardy twice. Under these circumstances we find no waiver.

## II

We proceed then to discuss the question of whether the Government was barred by the Constitution from prosecuting Anderson for the more serious crime of violating section 2113(d). Although the only constitutional claim raised by the defendant in regard to this precise point is an alleged double jeopardy violation, it also appears that there is a possible due process claim[3] and we shall therefore consider the issue on the basis of both possible grounds.

■■ We agree with defendant that a violation of section 2113(b) is a lesser included offense contained in section 2113(d). United States v. Davis, 439 F.2d 325 (8th Cir. 1971). Thus, if this were a case in which a defendant had been tried by a jury on a charge of violating section 2113(d) and convicted, after appropriate instructions, of violating section 2113(b) without any specific verdict having been returned as to section 2113(d), the Double Jeopardy Clause would be a bar to a subsequent prosecution for violating section 2113(d) even if the section 2113(b) conviction had been overturned on appeal. Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The issue with which we are faced is whether this principle should be extended to our factual situation.

■ Anderson's argument that the principle is applicable in this case is supported mainly by two Sixth Circuit cases. In Mullreed v. Kropp, 425 F.2d 1095 (6th Cir. 1970), the petitioner in accordance with a plea agreement, had pled guilty in a Michigan state court to the charge of unarmed robbery after having pled not guilty to the charge of armed robbery. His guilty plea was subsequently overturned on a federal habeas corpus petition. He was then tried and convicted for armed robbery. The court found that this armed robbery conviction amounted to double jeopardy. In part this conclusion was based on the fact that by accepting the plea of guilty to the unarmed robbery charge, the judge had to have found to be true facts inconsistent with a finding of guilty of armed robbery since an essential element of un-

3. See United States v. Jamison, 505 F.2d 407 (D.C.Cir. 1974).

armed robbery in Michigan is that the robber not be armed. Our case is distinguishable on this point because conviction under section 2113(b) does not require a finding that the robbery was committed without the use of a weapon. But the true rationale for the *Mullreed* decision appears to be the view that the state's decision not to prosecute the armed robbery charge is equivalent to the jury's refusal to convict on the greater charge in Green v. United States, *supra*:

> For purposes of the present appeal it was not the conviction on count two which is crucial here; rather it is the State's relinquishment of its rights, or its refusal, to prosecute on count one. Cf. Green v. United States, 355 U.S. 184, 190, n. 11, 78 S.Ct. 221, 2 L.Ed.2d 199.[4]

Under this rationale, *Mullreed* is indistinguishable from our case. Rivers v. Lucas, 477 F.2d 199 (6th Cir. 1973),[5] proves that this is the true basis for the Sixth Circuit's position. In *Rivers* the petitioner was charged with murder and allowed to plead guilty to a manslaughter charge. This conviction was reversed and murder charges were again brought against Rivers. *Mullreed* was found to be controlling:

> We affirm that there is implicit in a court's acceptance of a plea to an included lesser offense a determination that the right to prosecute the defendant on the more serious offense with which he is charged has been relinquished. The effect of the entire transaction, for double jeopardy purposes, is the equivalent of a jury's refusal to convict on the more serious charge. Only if this is true may a defendant seek review of his conviction without being faced with the "incredible dilemma" of choosing between a legal right and the possibility that success will revive the hazard of con-

viction of a charge which the prosecution had willingly abandoned in exchange for his plea.[6]

■ We believe that the Sixth Circuit's position is incorrect and refuse to follow it. The Government here did not unequivocally relinquish its right to prosecute Anderson for violating section 2113(d). Instead, it conditionally relinquished this right provided Anderson was convicted of and remained convicted of the section 2113(b) offense. This is in direct contrast to *Green* in which the implicit acquittal on the greater charge was in no sense contingent on the continued viability of the conviction for the lesser offense. When the section 2113(b) conviction was vacated the condition precedent to the Government's agreement not to prosecute no longer existed. The Government was then free to prosecute Anderson for the section 2113(d) charge without placing him twice in jeopardy. To hold otherwise is to find that the Double Jeopardy Clause gives the defendant more than the "benefit of his bargain" and ensures that he will not even be placed in jeopardy once under certain circumstances.

Still, we must also analyze this problem in terms of the effect it may have on a defendant's decision to attack his conviction on appeal. This factor was noted in *Rivers*, but we think it is more properly cognizable in due process terms.

■ North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), established that a due process deprivation may result if a defendant receives harsher treatment when he is retried and reconvicted after a successful appeal. Specifically, *Pearce* held that after a new trial a defendant cannot be given a more severe sentence unless objective reasons concerning conduct occurring after the time of original sentenc-

---

**4.** 425 F.2d at 1099.

**5.** In Lucas v. Rivers, 414 U.S. 896, 94 S.Ct. 232, 38 L.Ed.2d 139 (1973), the Supreme Court vacated this decision and remanded for consideration of the question of mootness in light of People v. McMiller, 389 Mich. 425, 208 N.W.2d 451 (1973). *McMiller* involved an analogous

situation to *Rivers* in which the Michigan Supreme Court rejected the double jeopardy claim, but reversed on the basis of its supervisory powers in order to ensure that guilty plea procedures are followed.

**6.** 477 F.2d at 202.

ing affirmatively appear. This is so that even the fear of vindictiveness will be eliminated:

> Due process of law, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.[7]

This principle was extended to prosecutorial conduct in Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), a case in which a greater charge was brought when the defendant, after conviction, exercised his state statutory right to a trial *de novo* in a higher court.

A case somewhat similar to ours in which this due process analysis has been applied is United States v. Jamison, 505 F.2d 407 (D.C.Cir. 1974). In *Jamison* the defendants had been indicted for second degree murder and carrying a dangerous weapon. During the trial on those charges their defense counsel made a grave error which resulted in a defense motion for a mistrial which was granted. Subsequently, the defendants were reindicted and convicted of first degree murder and carrying a dangerous weapon. Although their claims of double jeopardy were rejected, their convictions were reversed on due process grounds. The court held that the increased charge could stand only if the record reflected reasons supporting the decision which negated the possibility of vindictiveness. In that case the record was ·devoid of any such reasons.

▮ We find that our case is distinguishable from *Jamison* in terms of this crucial element of vindictiveness. In *Jamison* the Government had already elected to try the defendants on certain charges before the mistrial. But after the mistrial they chose to try them on greater charges. There was nothing that had occurred other than the mistrial so the change would appear to be vindictive unless other reasons were shown. In the instant case, however, the Government had never elected on which charge they would try Anderson if the case went to trial. The greater charge had been dropped in return for a plea of guilty to the lesser one. After that plea was vacated the situation reverted to the pre-plea stage. The fact that the greater charge was foregone as part of the plea arrangement does not mean that the Government would have prosecuted only the lesser charge originally if not guilty pleas had been entered as to both. Here we have a situation where there has been a major change other than just an appeal—the defendant had now pleaded not guilty to both charges. The decision to prosecute him for the more serious offense can on its face be explained in terms other than vindictiveness because of a successful appeal. There is no appearance of retaliation when a defendant is placed in the same position as he was in before he accepted the plea bargain. The mere reinstitution of the section 2113(d) charges, under these circumstances, did not amount to a deprivation of Anderson's due process rights.

### III

▮ There is the further question, though, of whether it was a violation of due process to sentence Anderson to ten years imprisonment even if it was proper to try him on the section 2113(d) charge. As indicated above, North Carolina v. Pearce, *supra*, teaches that it is mandatory to view the sentence in the light of due process considerations. Doing so, we find the sentence to be impermissible.

The statutory maximum sentence for the charge to which Anderson originally pled guilty was one year. · Had he been aware of this he would have been entitled to have his sentence so reduced. Yet upon the discovery of this fact by this court we vacated the plea at the

---

**7.** 395 U.S. at 725, 89 S.Ct. at 2080.

suggestion of the Government.[8] Not only was Anderson not required to respond to the newly discovered point, as was the Government, but our order did not even indicate that he had the right to respond. At that time he might have desired to withdraw his section 2255 petition in favor of a Rule 35, Federal Rules of Criminal Procedure, motion to reduce an illegal sentence. Indeed, it seems that even more than the original guilty plea being the result of lack of knowledge, the section 2255 petition to vacate the plea was filed under the mistaken assumption that he was legally sentenced to ten years imprisonment. Given these particular facts it was a violation of Anderson's right to due process of law to sentence him to a term of more than one year. Accordingly, we are hereby reducing the sentence imposed to a total of one year imprisonment.

The judgment of conviction is affirmed with the modification of reduction of sentence to imprisonment for one year. The mandate of this court shall issue forthwith.

FAIRCHILD, Chief Judge.

I respectfully dissent.

In 1972 it seems that Anderson was clearly entitled to proceed under 28 U.S.C. § 2255 on the ground that his "sentence was in excess of the maximum authorized by law" and was entitled to have his sentence vacated for resentencing within the one year maximum appropriate for the charge of which he had been convicted, or to have it corrected to such one year. He sought, however, to attack the conviction (and underlying guilty plea) as well, and was successful.

It seems to me that setting aside the conviction and plea cleared the way for the new indictment and conviction of the more serious offense. The record demonstrates, moreover, that originally the defense and the prosecution labored under a mutual mistake in that both supposed Anderson could and would be sentenced to ten years. Under the circum-

stances, the ten year sentence ultimately imposed does not seem unfair even though, as a result of a mistake, he once had a "vested" right in a one year sentence which he surrendered.

---

8. We note that we might have treated the section 2255 petition as a motion to reduce sentence pursuant to Fed.R.Crim.P. 35 and ordered the illegal sentence reduced to one year.