**UNITED STATES of America, Plaintiff,**

v.

**Lester A. PERKINS, Mack W. Daw, and Joseph H. Garney, aka Joe L. Garrett, Defendants.**

**Crim. No. H–80–108.**

United States District Court,
S. D. Texas,
Houston Division.

Dec. 15, 1980.

Ralph Hutmacher, Houston, Tex., for Perkins.

Don Lambright, Houston, Tex., for Daw.

Jack Bailey, Houston, Tex., for Garney.

Sam Longoria, Asst. U. S. Atty., Houston, Tex., for plaintiff.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

The three defendants in this case are charged with one count of conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 371; five counts of mail fraud, in violation of 18 U.S.C. § 1341; one count of using a false name in a mail fraud scheme, in violation of 18 U.S.C. § 1342; and one count of wire fraud, in violation of 18 U.S.C. § 1343.

Defendant Daw has raised a pretrial defense of double jeopardy as to the conspiracy count. Defendant Garney has raised the defense of double jeopardy as well as the terms of a prior plea agreement as a bar to his prosecution. It has been with difficulty that the threads of the various legal theories have been untwined and applied to the facts of this case.

I. *Statement of Facts.*

A. *The First Indictment.* In September 1979, Indictment H–79–132, was returned against four persons: Mack W. Daw, Lynn Wayne Swinford, Joseph H. Garney, and Dorothy Garney. Defendants were charged with conspiring to use the mails and to communicate by interstate wire facilities in furtherance of a scheme to fraudulently obtain money, credit, and property by means of false pretenses and representations. According to the indictment, the Defendants set up three retail stores in Houston, Texas: "American Design Furnishings, Inc.," "Anita's of Houston," and "John Wayne's Western Wear." They obtained furniture and clothing from manufacturers on credit, sold this merchandise at bargain prices, and then quickly went out of business without paying their creditors. The conspiracy described in H–79–132 took place from September 1, 1977 to May 30, 1978.

Defendant Joseph Garney signed a plea agreement whereby he would plead guilty to two counts of the indictment and would testify in any proceeding in which the Government called him, "against any other persons who may have been involved in the illegality to which I have pleaded Guilty to (*sic*) including Mack Daw, Lester Perkins and Lynn Swinford." The Government agreed (1) to dismiss the remaining seven counts of H–79–132 against Garney; (2) to dismiss all counts pending against Joseph Garney's wife, Dorothy Garney; and (3) not to charge Joseph Garney with any other illegality or conduct violative of Federal statutes then within the knowledge of the U. S. Attorney's office.

On the morning of November 5, 1979, Joseph Garney plead guilty as agreed. Judge George Cire accepted his plea, fully informed of the plea agreement. Later that day, a jury was empaneled and sworn, and trial commenced against Mack Daw on H–79–132. After five days of testimony by Mr. Garney, Judge Cire granted a mid–trial dismissal of the charges against Mack Daw. It is agreed that Daw was thereby acquitted of all charges in H–79–132. *See Finch v. United States,* 433 U.S. 676, 97 S.Ct. 2909, 53 L.Ed.2d 1048 (1977); *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). Judge Cire stated that the Government case proved nothing beyond non–payment of bills by businesses. He viewed the plea agreement as "heavy-handed" in requiring Garney to plead guilty to two counts and found Garney lacked credibility.

At this juncture, Judge Cire granted Garney's motion to withdraw his guilty plea and to dismiss the indictment against him. The Government did not oppose the motion. The charges against Swinford were also dismissed.

B. *The Second Indictment.* On August 4, 1980, a second indictment, H–80–108, was returned, charging three individuals–Lester A. Perkins, Mack W. Daw and Joseph H. Garney–with conspiring to commit and executing substantially the same scheme, from June 1, 1978 to January 31, 1979. This time the stores were called "My Ladies Shop" and "Akein Home Furnishings." Both were in new locations in Houston, Texas.

The modus operandi was the same as in the first indictment. Two of the core conspirators were identical. The first conspiracy allegedly "ended" the day before the second one "began." All the "businesses" were in Houston, Texas. All overt acts, or at least the Defendants' portion of such acts, took place in Houston.

Defendant Daw insists that the Government has carved two alleged conspiracies out of what in reality was one, and that he was acquitted of that conspiracy in November 1979. He argues that any trial on the conspiracy count, at least, would constitute double jeopardy.

Defendant Garney pleads "double jeopardy," and urges enforcement of the plea agreement which he maintains he fully complied with by pleading guilty and testifying.

The Government insists there were two separate conspiracies; that Garney was never in jeopardy under the first indictment; or if he was, his withdrawal of the guilty plea removed him from jeopardy and released them from any obligation to keep their part of the bargain. It is undisputed that the facts upon which the second indictment are based were known to the Government at the time of Garney's plea agreement. Garney emphasizes the use of Perkins' name in the plea agreement, even though Perkins was not named in the first indictment.

## II. *The Conspiracy Charges.*

A. *Defendant Daw.* Pursuant to the requirements of *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), a pretrial double jeopardy hearing was held on November 25, 1980. The procedures for such a hearing as set forth in *United States v. Stricklin*, 591 F.2d 1112 (5th Cir. 1979) were followed. *Stricklin* dictates that once the defendant has made a nonfrivolous prima facie showing of double jeopardy, the burden shifts to the Government to establish that separate crimes are charged in the indictments. *Id.* at 1117–1118. The government may come forward with as little or as much evidence as it deems advisable; however, it must carry its burden of demonstrating that two separate offenses are charged by a preponderance of the evidence. *Id.* at 1119.

■ The breadth of a conspiracy is determined by focusing on the unlawful agreement. A single agreement may have as its object to commit several times. Each overt act does not evidence a separate conspiracy to commit that act. *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). The "same evidence" test is not suited to conspiracy cases, since different overt acts may be chosen by the prosecutor to try to establish several smaller conspiracies. *United States v. Mallah*, 503 F.2d 971, 985 (2d Cir. 1974).

■ Instead, the relevant question is whether the particular transactions alleged in the two indictments were within a larger, unified conspiracy. *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir. 1978). The principal factors in establishing one conspiracy are the existence of a common goal, the nature of the scheme, and an overlapping of participants in various dealings. *United States v. Becker*, 569 F.2d 951 (5th Cir. 1978), citing *United States v. Morrow*, 537 F.2d 120 (5th Cir. 1976), cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). The court should consider the time span, the persons alleged to be co–conspirators, the statutory offenses charged by the government, the overt acts, and the places where the events alleged as part of the conspiracy occurred. *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978).

■ In the case *sub judice*, the first conspiracy is alleged to have taken place from September 1, 1977, to May 30, 1978. The Government alleges that a second separate conspiracy began the very next day, June 1, 1978, by at least two of the same core conspirators, Daw and Garney, to perpetrate the identical scheme at different locations within Houston, Texas. Entirely different overt acts are given as the basis for the two indictments, but the same statutory violations are charged. There is no overlap of time in the two indictments, but the Defendant Daw alleges, and the Govern-

ment does not deny, that it will introduce at least one document in the second trial which "reaches back" into the period of the first conspiracy. There were different clothing and furniture suppliers for the businesses involved in the second indictment, but this does not constitute such a material change in the agreed–upon scheme as to form a different conspiracy. See *United States v. Ruigomez, supra*, at 1152. Therefore, the Court finds that Defendant Daw has established a nonfrivolous prima facie showing of double jeopardy, and that the Government has not proved by a preponderance of the evidence that there were two separate conspiracies. Defendant Daw has been acquitted of one conspiracy. Therefore, the conspiracy count in H–80–108 is dismissed as to Defendant Mack Daw on grounds of double jeopardy.

 B. *Defendant Garney.* When Garney's guilty plea on two counts of H–79–132 was accepted by Judge Cire, jeopardy attached, just as if a jury had found a verdict of guilty against him. *United States v. Sanchez*, 609 F.2d 761, 762 (5th Cir. 1980); *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir. 1973). When he was permitted to withdraw his guilty plea, he was removed from jeopardy. See *Jerry* at 606. "As is the case where a defendant by his own motion causes a verdict to be set aside, thereby waiving his constitutional protection against being 'twice put in jeopardy' for purposes of retrial of the same offense, so too where a defendant by his own motion causes the withdrawal of his guilty plea, he has waived his right to be put in jeopardy a second time." *Id.*

 Furthermore, the subsequent dismissal of the charges in H–79–132 against Garney, upon Garney's unopposed motion, does not preclude trying him on the conspiracy count. When a motion to dismiss an indictment is granted before a jury is empaneled and sworn to try the case against that defendant, or before the first witness is sworn, jeopardy has not attached. The District Court is without power to make any determination of guilt or innocence. *Serfass v. United States*, 420 U.S. 377, 389,

95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975); *United States v. Mann*, 517 F.2d 259 (5th Cir. 1975), cert. denied 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). Garney was not acquitted of the charges in the first indictment. This was not a mid–trial dismissal as to Garney. Only Mack Daw was on trial. The Garney dismissal was in the nature of a Rule 12(b) pre–trial motion. Even if an indictment is dismissed after a pretrial evidentiary hearing and is based on evidence outside the indictment, it cannot be construed as a ruling "favorable to the defendant" for double jeopardy purposes. See *Mann* at 266–67. Therefore, even though there may have been but one conspiracy, double jeopardy does not preclude trying Garney on the conspiracy charge in H–80–108.

III. *The Plea Agreement.*

Garney further argues that the terms of his plea agreement are a bar to the Government's trying him on any of the charges in H–80–108, both the conspiracy and the substantive counts. He insists that he complied completely with his part of the bargain by pleading guilty and testifying in the first trial. The Government maintains it need not comply with the terms of the plea agreement since Garney withdrew his guilty plea and was never sentenced. Thus there is a basic disagreement as to whether Garney "kept" his bargain.

 Garney's argument that he "kept" his agreement to plead guilty, even though he later withdrew his plea, is without merit. See *Harrington v. United States*, 444 F.2d 1190 (5th Cir. 1971); *United States v. Myles*, 430 F.Supp. 98 (D.D.C.1977), aff'd 569 F.2d 161 (D.C.Cir.1978); *United States v. Williams*, 534 F.2d 119 (8th Cir. 1976). A Defendant who withdraws his guilty plea may be re–charged and tried both on the counts to which he originally plead guilty and on those dismissed in return for the plea. *Myles, supra.* A defendant who moves to vacate a bargained–for sentence tacitly repudiates the former plea bargain whereby he obtained dismissal of other counts of the indictment. *Harrington, su-*

*pra* at 1194. The relinquishment of the right to prosecute a defendant who pleads guilty to a lesser charge is a conditional relinquishment, conditioned upon the defendant's being and remaining convicted. See *United States v. Williams*, 534 F.2d 119, 122, fn. 2 (8th Cir. 1976).

However, Garney did keep the second part of his plea agreement. He testified for five days at Daw's trial on H–79–132.

For its part, the Government did not oppose the dismissal of the first indictment against Garney. And all charges against Dorothy Garney in H–79–132 were dismissed. But they have brought the H–80–108 charges against Garney, relating to matters admittedly within their knowledge at the time of the plea agreement. Thus both sides have partially kept and partially broken the terms of the agreement.

■ A plea agreement must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). If the performance by the defendant was induced to any significant degree on a prosecutor's promise, the promise should be fulfilled. *Id.* It is impossible to "pair" the promises and say that Garney's promise to testify was induced by the reciprocal promise to dismiss charges in H–79–132 against him and his wife, which the Government complied with, and not by the promise to forego further charges against him arising out of the same series of transactions.

It was a package deal. The testimony at the first trial was induced as much by the promise of immunity as by the promise to dismiss current charges.

The anticipated immunity was not merely a "use" immunity, precluding the use of the testimony at a future trial, or as an investigatory lead, or even use of any evidence obtained by focusing on Garney as a result of his testimony. *See Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972); *Beverly v. United States*, 468 F.2d 732 (5th Cir. 1972).

A transaction–type immunity was contemplated by both parties. The Court is unable to say that there is no danger of "taint" of the Government's prosecution of H–80–108 flowing not only from Garney's prior testimony, but also his conversations with the Government prosecutor in preparation for trial. There is no way to assure that Garney's defense is not prejudiced.

The Government had the benefit of Garney's testimony, regardless of how little or how good it did them. If one side or the other must bear the weight of a bad bargain, the facts of this particular case and the reasons for Judge Cire's dismissal of the first case indicate that justice would be better served by the Government bearing them. The charges against Joseph Garney are dismissed.

■ This pretrial dismissal is not an acquittal of Mr. Garney on these charges. Therefore, it does not preclude trying Lester Perkins on the conspiracy count in H–80–108. He could still be shown to have conspired with Mr. Garney.

■ Mack Daw's acquittal on the conspiracy charge does not preclude his trial on the substantive counts of H–80–108.

Jury selection in this case will begin at 1:30 p. m. on January 5, 1981.